PICOT, Appellant, v. SIGNIAGO, Respondent.

1. A surety may contract as a " principal," and by so doing will renounce the right of setting up a defence arising out of the relation of principal and surety.
2. A. and B. executed a bond whereby they obligated themselves "as principals" to build a house for C., the house to be built by A. ; payments to be made as the work should progress, retaining twenty-five per cent. on the amount of work done, and the balance after the entire completion of the work, &c., to the satisfaction of the said C., and after the settlement of " all lawful claims, liens or demands against said work, on account of materials furnished or work done ;" and C. to be secured " from all claims and losses." Liens were filed by material men against the building, which were paid by C. *Held*, in a suit by C. against B., that B. could not set up as a defence that C. had paid to A. the whole value of the work done, not reserving the 25 per cent. ; he (C.) not knowing at the time that there were valid liens upon said building.
3. In order to entitle C. to recover compensation in such a case, it is not necessary that payment of the sums for which the liens were held should be first enforced by suit and execution. All that is necessary is that they should be valid liens and enforceable.

*Error to St. Louis Court of Common Pleas.*

This was a suit brought by Louis G. Picot against James Signiago, to recover damages for the breach of a contract. Picot entered into a contract with one Porter Bush, to do all the necessary brick work, according to certain specifications, of a market-house, then about to be erected by said Picot. The contract among other stipulations contained the following : " And the said Louis G. Picot, on the second part, does hereby covenant and agree with the said Bush, that he shall and will pay to the said Bush, his heirs or assigns, for the entire completion of the work mentioned, to the satisfaction of the said superintendent, at the rate of $3 50 per thousand of bricks, measured when in the walls, without any extra allowance ; payments to be made as the work progresses, retaining twenty-five (25) per cent. on the amount of work done, and the balance after the entire completion of the work to the satisfac-

tion of the said Louis G. Picot or superintendent, and after the settlement of all lawful claims, liens or demands against said work on account of materials furnished or work done." There was also this further clause : "And for the faithful performance of all and singular the terms of this contract, and for the securing the said Picot from all liens, claims and losses, the said Bush, and James Signiago, and —— ——, *all as principals*, do hereby bind themselves, their executors, administrators and assigns, unto the said Picot, in the penal sum of one thousand dollars, firmly by these presents. Witness our hands and seals this 16th of September, 1850. [Signed] Porter Bush, (seal). James Signiago, (seal).

Plaintiff assigned as a breach of said contract that the said Bush and Signiago had not secured plaintiff from all liens, claims and losses, but that a large number of liens upon said building had been filed in the office of the clerk of the Circuit Court by mechanics and laborers employed upon said building by said Bush, which liens were claims and charges upon said building valid in law. Plaintiff alleged that he had paid $104 38 of said liens ; that the remaining valid liens against said building amounted to $277 55 ; that plaintiff, at the urgent solicitation and request of the said Bush, paid to him all the money due to him on account of said contract, with the exception of about $46, and that such payments were made without any knowledge that any liens had been filed.

The defendant, in his answer, admitting the execution of the contract, says : "That, according to said agreement, the said plaintiff had in his possession moneys belonging to said Porter Bush, and retained from said Bush more than sufficient to pay every liability, lien, claim and demand against said market-house mentioned in plaintiff's petition, due or to prove due, or arising from the work done by said Bush ;" and more than sufficient to pay all debts, dues and demands against said market-house by reason of any failure on the part of the said Bush to faithfully perform all and singular the terms, conditions and stipulations in said agreement, &c.

Picot v. Signiago.

On the trial, plaintiff gave testimony tending to prove the value of the work done by Bush under the above contract; also the amount paid by plaintiff to Bush on account of said work; that a number of liens and claims on the building were filed in the clerk's office of the Circuit Court; that judgments were obtained on said liens in the Circuit Court, and that plaintiff paid those judgments.

Plaintiff then offered to prove that a number of liens and claims on said building were filed by different persons; that they were prosecuted to judgment against Bush before a justice of the peace for St. Louis county, and that plaintiff paid these judgments without the filing of any transcripts in the clerk's office of the Circuit Court, and without the issue of any executions thereon, and offered, in this connection, to prove that the payments were made by plaintiff upon representation made to him by the respective claimants that they would file a transcript and take out execution on their respective claims unless they were paid; that such payments were made by plaintiff to save the accumulation of costs. This testimony was ruled out by the court. To this exclusion plaintiff excepted.

Plaintiff further showed that Bush left the country about or just before the time of the completion of the building, and that plaintiff, a few evenings prior thereto, paid Bush almost the whole of the 25 per cent. then in his (plaintiff's) hands at the request of Bush, and without the knowledge or consent of defendant (Signiago).

The following instruction, asked by plaintiff, was refused by the court: "1. If the jury believe from the evidence in this case that the plaintiff paid the judgments obtained in the Circuit Court upon the liens filed against the Harney market, they will find for the plaintiff the amount so paid, (deducting therefrom the amount, if any still due from plaintiff to Bush,) with interest from the time when said amounts were paid." Plaintiff excepted to the refusal of this instruction.

The court then gave the following instruction: "2. If the jury believe from the evidence that the plaintiff paid on the

judgments in the Circuit Court, read in evidence, any sums of money, they will find for the plaintiff, unless they further find that 25 per cent. of the contract price of the work done by Bush, under the contract sued upon, together with the amount due Bush, still in the hands of plaintiff, equals or exceeds the amount so paid by plaintiff. By the terms of the contract sued upon, the plaintiff was to retain 25 per cent. of the contract price of the work and materials furnished by Bush on the building in question, until the work was completed, and until all lawful claims, liens and demands against said work, on account of materials furnished or work done, were settled; and if plaintiff, before the completion of said work and settlement aforesaid, paid over to said Bush any portion of said 25 per cent., then the defendant is entitled to have the portion of said 25 per cent. so paid over, and also whatever is still due to said Bush, deducted from the amount of payment made by the plaintiff on the liens offered in evidence. If after making such deductions the balance is in favor of the plaintiff, they will find for the plaintiff and assess his damages at the amount of said balance. If there is no such balance in favor of the plaintiff, they will find for the defendant." Plaintiff excepted to the giving of this instruction.

Plaintiff submitted to a nonsuit, with leave to move to set the same aside, and a motion to that effect having been made and overruled, the case is brought here by writ of error.

*C. B. Lord,* for appellant. 1. Signiago was a principal in the contract. 2. Appellant was not bound to retain 25 per cent. of the contract price of said work. 3. Appellant was entitled to recover the amount paid by him on all the liens on which judgment was obtained before the justice. I. When a man contracts to make himself a principal, the law will not make him a surety. (10 Barn. & Cres. 578; 1 M. & W. 568; 10 Pet. 257; 14 Pet. 201; 2 Am. Lead. Cases, 180.) It was expressly stipulated that the liability of Signiago was to be that of a principal. *Modus et conventio vincunt legem.* Where several parties sign an instrument as if all were princi-

pals, but the relation of principal and surety exists as between the parties, that fact may be proved; but where, as in this case, the surety in fact agreed to become principal, his legal liability is that of a principal. The court below, in giving and refusing instructions, assumed that the relation of Bush and Signiago, as between themselves, controlled the rights of appellant against the express agreement of Signiago. If the liability of Signiago was that of a principal, the court erred in refusing the instruction asked for by appellant, and in assuming, by the instructions given, that appellant was bound to retain 25 per cent. of the contract price in his hands. II. Appellant was not bound to retain 25 per cent. of the amount of the contract price in his hands. It was a privilege only reserved to himself; no liens were filed at the time. III. The appellant can recover for all moneys paid upon the judgment obtained before a justice of the peace on liens duly taken. The court below thought that the payment without the issue of execution of the judgments in all cases where liens had been taken, was voluntary. It was in no sense a voluntary payment, nor does the doctrine of voluntary payments apply to the case. The payments were made, as appears by the record, after lien filed and ascertainment of the amount by the judgment of a tribunal of competent jurisdiction; all the subsequent proceedings required by the statute are in the nature of execution; the payment was made to save costs. Now suppose a suit brought against Bush for money paid on those liens, would there be any doubt about a recovery against him? Signiago stands precisely as Bush would have stood had he been sued.

*Hart & Jecko*, for defendant in error. 1. The court below properly excluded the testimony offered by appellant. The judgment before the justice was against Bush, and no act was done by the plaintiff to perfect said judgment, so as to make it a lien on the building; and the voluntary payment of a judgment against Bush, which might or might not have been sufficient to have made it a judgment against the building, does not in any way bind Signiago to account to Picot for said payment,

so voluntarily made, they being judgments against Bush and not liens on the building. The judgments before the justice were mere judgments against Bush, and did not even operate as a lien on the real estate of Bush. No act was done to perfect, by means of said judgments, a lien against the Harney market, which could only be done by filing a transcript of the judgment in the Circuit Court; and the payment by Picot of those judgments amounts to the fact that Picot has paid some debts against Bush, and no further can such testimony go. Certainly it is incompetent testimony to charge Signiago. 2. The instructions given by the court were proper and legal. The contract was made between Picot, as trustee, with Bush; and one of the conditions in said agreement is, that the said Picot is to retain 25 per cent. on the amount of work done and hold the same until after the entire completion of the work to the satisfaction of Picot or the superintendents, and after the settlement of all legal claims, liens or demands against said work on account of materials furnished or work done. Picot, then, was bound to retain the 25 per cent. of the amount of work done until the completion of the building, and all legal liens, claims or demands against said market-house were satisfied; and having that in his hands and possession, and parting with it or surrendering it to Bush, without the knowledge or consent of Signiago, Mr. Picot loses his claim against Signiago to the amount of the said 25 per cent. so surrendered to Bush. (Baker v. Briggs, 8 Pick. 122; Mayhew v. Crickett, 2 Swaust, 185.) We maintain that, though the word security is not annexed to the name of Signiago in the penal part of the agreement, yet that from the instrument itself, its nature and character, Signiago, being sued alone, will be legally considered as a security for Bush's faithful performance of the contract; and that Signiago, notwithstanding the word security is not used in the instrument itself, was very properly held to have signed as surety for Bush. We call the attention of the court particularly to the case of Baker v. Briggs (8 Pick. 122), in support of this position.

SCOTT, Judge, delivered the opinion of the court.

The instruction on which the cause went off in the court below, was not based upon any defence set up in the answer of the defendant; but as the point may come up again after an amendment, and as it was the only matter that was argued before us, it may be necessary to express an opinion in relation to it. The question is, whether one who becomes a party to a bond as surety in reality, and who would be regarded as such but for binding himself "as principal," can claim the right, or set up the defence, growing out of the relation of principal and security.

There is no rule of law which prohibits a surety from waiving the right belonging to him as such. Such a waiver has nothing in itself offensive to the policy of the law. Nor is there any thing in the situation of the surety in regard to the party with whom he contracts, which excites the vigilance or arouses the jealousy of the law. Usually the surety is less subject to the influence of the person with whom he deals, than any other contracting party. There is nothing of surprise or mistake alleged in the transaction. When the relation of surety has been created, there are certain safeguards thrown around it for its protection; but the law throws no obstacles in the way of a renunciation of those rights. If the surety here has not stripped himself of that relation by the contract he has entered into, it is not easy to see in what manner that object can be accomplished. He expressly binds himself "as principal." Now there must have been some purpose in adopting that word. When the term "principal" is used in a contract, it must be intended in a sense opposite to that of "security." The defendant might have become a mere surety to the contract, but when he renounced that character and expressly bound himself as principal, with what face can he afterwards insist that he is only a surety? When the plaintiff would not take his obligation as surety, but required him to be bound as principal, where is the justice in depriving him of the fruits of his vigi-

lance, and imposing on him a contract directly contrary to that for which he expressly stipulated? To hold that the defendant is not bound as principal in this contract, is tantamount to declaring that one who really occupies the relation of surety in a contract, can not be bound as principal—a proposition for which there is no support in the law. We are not without authority on this point. In our highest tribunal, the Supreme Court of the United States, this question has undergone elaborate discussion, and the principle announced there harmonizes with the views here expressed.

In the case of Spriggs v. The Bank of Mount Pleasant, (10 Pet. 257,) those who were sureties in reality bound themselves " as principals" to pay a sum of money, and attempted a defence growing out of their relation as sureties. The defence did not prevail. The court said, " when one who is in reality only security, is willing to place himself in the situation of a principal, by expressly declaring upon his contract that he binds himself as such, there can not be any hardship in holding him to the character in which he assumes to place himself. As to that particular contract, he undertakes as a partner with the debtor, and has no more right to disclaim the character of principal than the creditor would have to treat him as principal, if he had set out in the obligation that he was only surety." The same parties afterwards renewed their defence in a court of equity, and the case was up in 14 Pet. 207; the court there remarked that " all the evidence showing that the party was surety, can have no influence against his direct admission in the obligation that he was a principal; and there being no pretence of any mistake or surprise, there can be but one meaning attached to this admission, which is, that as, between the obligors and the bank, all were principals, whatever might be their relation between themselves. They had undoubtedly a right to waive their character and legal protection as sureties, and assume the character of principals. This admission in the obligation must have been for some purpose; and none can be reasonably assigned, except that it was intended to place

all the obligors upon the same footing with respect to their liability."

It may be said that there is a difference between the case under consideration and that to which reference has been made, inasmuch as by the bond before us it appears that the defendant was a mere surety ; whereas, in the case referred to, it did not appear by the terms of the obligation but that all were principals. But, when we reflect that the case in Peters is made to stand on the contract by which the parties bound themselves as principals, the difference amourts to nothing. The court says expressly, " all the evidence only establishes the fact that the party was surety, and that can have no influence against his direct admission in the obligation that he was principal."

If what has been maintained above be correct, there can be nothing in the agreement that the plaintiff was bound, by the terms of the contract, to retain in his hands 25 per cent of the money due for the work, until the building was completed and all liens satisfied. It is a begging of the question, and assuming that the defendant was a surety, when, by the terms of his contract, he was a principal. Being a principal, he was not injured by a renunciation by the plaintiff of his right to retain the 25 per cent. The plaintiff was under no obligation to do so, and his neglect can not affect his rights under the contract. The case is, as if a principal in the bond was complaining that the money had not been retained, when it was optional with the obligee whether he would retain it or not.

The plaintiff is entitled to recover the amount of all valid liens on the building which he has satisfied. If the lien was valid and subsisting, he is entitled to recover its amount, though its payment was not coerced by the process of the law. It could serve no useful purpose to subject the parties to the expense of an execution. Judge Ryland concurring, the judgment will be reversed, and the cause remanded.