Academy of Music Co. vs. Davidson.

ACADEMY OF MUSIC COMPANY, Respondent, vs. DAVIDSON, Appellant.

*April 14 — May 2, 1893.*

*Landlord and tenant: Covenant of third person to assume lease: Surety- ship: Subrogation: Evidence.*

1. Pending negotiations for the leasing of plaintiff's theatre to a com- pany owning another theatre, the defendant, a stockholder in such company, covenanted that in case such "leasing" should cause the tenant of a saloon in plaintiff's building to leave said building or throw up his lease the defendant would assume said lease and pay the rent therefor for the full term. *Held,* that defendant became liable on such covenant when his company, having leased the theatre, changed and restricted its use so that the business of the saloon keeper was practically destroyed, and he left the building and threw up his lease because thereof. It was not necessary that the mere execution of the lease should have worked such results.

2. Defendant did not merely become security for the payment of the rent by the saloon keeper, but the covenant was an original under- taking on his part that if the specified contingency arose he would assume the lease and pay the rent. The covenant thus became the equivalent of a lease by plaintiff to defendant containing the terms and conditions of the lease to the saloon keeper.

3. The fact that, after default by the saloon keeper in payment of rent, plaintiff took the necessary steps to terminate his lease and get him out of the building, did not defeat plaintiff's right to recover on the covenant; nor was plaintiff bound to subrogate defendant to its rights against the saloon keeper, or to obtain a formal assign- ment of his lease to defendant.

4. In an action upon the covenant, evidence as to statements of the saloon keeper (who had died before the trial), made while he was still in possession of the saloon and was about leaving it, was properly admitted to show the claim made by him as to the reasons why he left the building and threw up his lease,— such evidence being excluded as proof of the truth of such claim.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff corporation owns a theatre building in Milwaukee, known as the Academy of Music. In such building there is a store used as a saloon, which the plaintiff leased to one Tony Vollert for three years from September 15, 1890, at a rental of $1,000 for the first, $1,100 for the second, and $1,200 for the third, year, payable quarterly in advance. Vollert went into possession of the saloon under such lease, and paid the instalments of rent which became due September 15 and December 15, 1890.

In December, 1890, plaintiff leased the Academy of Music, except the store or saloon thus leased to Vollert and some other rooms, to a corporation known as the Milwaukee Theatre Company, in which defendant was a stockholder and officer. The term of such lease commenced January 1, 1891, and will expire May 1, 1895. The lessee was also the owner of a building known as the Davidson Theatre, in Milwaukee, and the two companies were to some extent rivals in procuring theatrical, musical, and other entertainments and exhibitions in their respective theatres.

The lease contained covenants by which the lessee assumed the agreements for such entertainments and exhibitions theretofore made by the lessor, and that one half, at least, of all performances, exhibitions, and entertainments contracted for by the lessee should be had and held in the Academy of Music.

Pending the negotiations for such lease to the theatre company the defendant executed an obligation in writing,

under seal, to the plaintiff, in which he covenanted to pay plaintiff the stipulated rent of the leased building. The obligation also contains the following covenant, which is the basis of this action: " And in case the leasing of said Academy of Music to the Milwaukee Theatre Company shall cause the present tenant of the saloon in said Academy to leave said building or throw up his lease, the undersigned hereby covenants and agrees with the Academy of Music Company to assume said lease and pay the rent therefor, and save the Academy of Music Company harmless because of the same, for the full term of said saloon lease."

Tony Vollert failed to pay the rent of the saloon which became payable March 15, 1891. Under date of January 14, 1891, he notified plaintiff by letter that by reason of the falling off of his business after January 1st, caused by the closing of the theatre, he would be unable to pay the agreed rent. Plaintiff immediately sent this letter to the defendant. In May, 1891, the plaintiff served a notice upon Vollert to quit the possession of the saloon, and commenced proceeding to dispossess him. Pending such proceedings Vollert voluntarily surrendered the possession of the saloon to plaintiff, on condition that no costs should be taxed against him. June 5, 1891, plaintiff tendered possession of the saloon to the defendant, but he refused to accept the same or pay any rent therefor. This action was brought upon the above covenant after June 15, 1891, when another instalment of rent became due, to recover the accrued and unpaid rent.

There was testimony on the trial to the effect that the patrons of the saloon were mostly visitors to the entertainments and exhibitions in the Academy of Music, and the employees therein; that until the building was leased to the theatre company it was so managed and operated by plaintiff that Vollert was able to pay his rent from the

profits of his business; and that, after the theatre company took possession, there were less entertainments in the building, and fewer persons employed therein, and consequently that the business and profits of Vollert were so greatly reduced that he became entirely unable to pay the rent, and for that reason was compelled to surrender the saloon and give up his lease. Vollert died before the action was tried.

There was a special verdict. The controlling fact found therein is that the leasing of the Academy of Music by the plaintiff corporation to the Milwaukee Theatre Company caused Vollert to leave said building and throw up his lease. The other facts found were undisputed, and were directed by the court. These are that Vollert so left the building and threw up his lease May 15th, and the possession of the building was tendered by plaintiff to defendant, and refused by the latter, June 5, 1891. The court held the measure of plaintiff's damages to be the unpaid rent accruing under Vollert's lease from June 5th to June 15th, and the quarter's rent due at the latter date by the terms of such lease, and interest thereon from those dates respectively. On this basis the jury assessed plaintiff's damages at $304.24. They also returned a general verdict for plaintiff.

A motion by defendant for a new trial was denied, and judgment for plaintiff entered for the damages assessed by the jury and for costs. The defendant appeals from the judgment.

For the appellant there were briefs by *Miller, Noyes & Miller*, and oral argument by *Geo. P. Miller*. They contended, *inter alia*, that the trial court erroneously construed the word "leasing" in the covenant to mean not only the change of proprietors but also the manner in which the new proprietors managed the theatre. This interpretation of the covenant is not justified by its language, and inserts in it new and additional conditions. The cove-

nant provided only for the contingency of Vollert vacating the premises or throwing up his lease, not for the contingency of his failing to pay rent. The plaintiff having induced Vollert to vacate the premises cannot claim indemnity from the defendant by reason of such vacation. The only way Vollert ever left the premises or threw up the lease was because of the legal proceedings instituted by plaintiff, not by reason of the leasing. If by any interpretation of the covenant the defendant was liable upon Vollert's failure to pay rent, then the plaintiff lost its claim against him when, of its own accord and by legal proceedings through its own attorneys, it canceled its lease with Vollert and placed itself in a position so that it could no longer subrogate the defendant to its rights against Vollert. The contract of defendant was merely a guaranty which expired with the lease to Vollert. A lease is canceled by a voluntary surrender of the premises by the tenant and its acceptance by the landlord. *Kneeland v. Schmidt*, 78 Wis. 345; *Witman v. Watry*, 31 id. 638. Instituting proceedings to oust a tenant will also terminate a lease. *Cushingham v. Phillips*, 1 E. D. Smith, 416; *Whitney v. Meyers*, 1 Duer, 266; *Hinsdale v. White*, 6 Hill, 507; *McKensie v. Ferrell*, 4 Bosw. 192. If a lessee terminates a lease by a notice to quit that will discharge a guarantor. *Tayleur v. Wildin*, L. R. 3 Exch. 302; *Blyth v. Dennet*, 13 C. B. 178; Wood, Landl. & T. sec. 48; *Glassell v. Coleman*, 94 Cal. 260; *Prior v. Kiso*, 81 Mo. 241.

For the respondent there was a brief by *Rogers & Mann*, attorneys, and *Geo. E. Sutherland*, of counsel, and oral argument by *Mr. Sutherland*. They argued, among other things, that *Davidson* was not a surety, but assumed the obligations of Vollert's lease. *Cook v. Durham*, 61 Wis. 15, 19; *York v. Orton*, 65 id. 6; *Regester v. Dodge*, 61 How. Pr. 107.

LYON, C. J.   The plaintiff corporation leased its build-
ing, known as the Academy of Music, in the city of Mil-
waukee, except a store therein used as a saloon, and some
other rooms, to the Milwaukee Theatre Company, a corpo-
ration in which defendant was interested as a stockholder
and officer.   About three months before such lease was
executed, such store or saloon was leased by plaintiff to one
Tony Vollert for three years from September 15, 1890, at
a specified rental.   Vollert had made two payments of rent,
and was not in default when the building was thus leased
to the theatre company.   In the negotiations for the lease
to that company the plaintiff evidently was apprehensive
that the theatre company might, if it had control of the
Academy of Music, take the entertainments and perform-
ances which otherwise would be held therein to the David-
son Theatre, which that company owned and controlled,
to the injury of the good will of the Academy, and so it
sought to guard itself against that contingency by certain
covenants in the lease mentioned in the above statement
of facts.   Moreover, the business of Vollert depended
largely upon the patronage of the employees in the Acad-
emy, and of people who went there to witness exhibitions
and performances therein.   The plaintiff was interested in
the success of Vollert's business, which might be injured
or destroyed should the theatre company close the Acad-
emy or use it for such entertainments infrequently.   Mani-
festly, the covenant of the defendant upon which this ac-
tion is predicated was exacted and given to guard against
such a contingency.   The covenant is that, if the leasing
of the Academy to the theatre company caused Vollert to
leave the building and throw up his lease, the defendant
would assume the lease and pay plaintiff the rent stipu-
lated therein for the full time thereof.

Vollert did leave the building, and did throw up his lease
in May, 1891.   The plaintiff is not prejudiced by the fact

Academy of Music Co. vs. Davidson.

that it took the necessary steps to terminate the lease and get Vollert out of the saloon because of his default in the payment of rent. The covenant is not that defendant thereby becomes security for Vollert for the payment of the rent, but is an original covenant on his part that if the specified contingency arises he will assume the lease and pay the rent. The covenant itself thus becomes the equivalent of a formal lease by plaintiff to defendant containing the conditions specified in Vollert's lease. Under this covenant, defendant was entitled to the possession of the saloon before he could be held liable on his covenant. Hence it was necessary for the plaintiff, after Vollert's default, to obtain possession of the saloon to the end that it might put defendant in possession thereof. When that was done, or offered to be done, the covenant in suit, which was accepted by plaintiff, fixed the rights and liabilities of the parties. It would be simply a play upon words to say that the mere execution of the lease must have worked those results, or the defendant is not liable. Having due regard to the situation of the parties, the surrounding circumstances, and the objects manifestly intended to be accomplished by the parties by giving and accepting it, the only reasonable construction of the covenant is that inasmuch as the profits of Vollert's business were sufficient to enable him to pay his rent while the Academy was managed by the plaintiff, if the theatre company should so change or restrict the use thereof as to seriously injure such business of Vollert, in consequence whereof Vollert should cease to pay rent and leave the building, the defendant was to assume the lease and pay the stipulated rent for the balance of the term.

The foregoing construction of the covenant is substantially that given thereto by the learned circuit judge in his instructions to the jury. The finding of the jury upon the controlling question in the case is a finding that the contin-

gency had arisen which fixed the liability of defendant
under his covenant. The testimony, although controverted
in some particulars, is sufficient to support findings that
the theatre company changed and restricted the use of the
Academy from what it had theretofore been, and presum-
ably would have continued to be had the plaintiff retained
control of it, so that the business of Vollert was practically
destroyed, and he left the building and threw up the lease
because thereof. This supports the finding that the leas-
ing of the Academy to the theatre company produced those
results.

It is argued that plaintiff cannot recover because it failed
to subrogate defendant to its rights against Tony Vollert.
It is a sufficient answer to this position that plaintiff has
not agreed to do so. The covenant is not to subrogate
defendant to plaintiff's rights against Vollert, but to sub-
rogate him to Vollert's liabilities under the lease to plaint-
iff. The most defendant can plausibly claim under the
covenant is that it may be implied, from his agreement to
assume Vollert's lease in the specified contingency, that
plaintiff was bound to obtain an assignment thereof to him.
It has already been suggested that the accepted covenant
in question is the equivalent of a lease by plaintiff to de-
fendant containing the terms and conditions of the Vollert
lease. Hence a formal assignment of that lease to defend-
ant is entirely unnecessary, and for that reason it should
not be held that the covenant requires such assignment to
be obtained.

The foregoing views determine the case on the merits
favorably to plaintiff. It only remains to consider briefly
certain rulings of the court admitting testimony against
the objections of defendant thereto. Such testimony is to
the effect that, before and at the time Vollert left the build-
ing and threw up his lease, he claimed that the theatre com-
pany had so reduced the number of performances in the

Academy that his trade had thereby fallen off, and that he was losing money in the business, and could not go on with it, at least without a reduction of his rent, which were the reasons why he was about to leave and did leave the building and throw up his lease. Some of this testimony consisted of statements contained in correspondence between defendant and the agents of plaintiff, and some of it was given by such agents, who testified on the trial that Vollert so claimed. The same claim was substantially made in a letter dated January 14, 1891, written by Vollert to plaintiff, which letter was at once forwarded by the secretary of plaintiff to defendant. In ruling upon an objection to this class of testimony the learned circuit judge stated that he admitted it, "not for the purpose of proving the facts stated in Vollert's letter, or as competent to prove such facts, but for the purpose of showing the claim made by Vollert in respect to his leaving, and in respect to his loss of patronage by reason of the leasing of the property to the Milwaukee Theatre Company." We think it was competent to prove in this manner the claim of Vollert as to the reasons why he left the building and threw up his lease. Vollert having died before the trial, no other direct testimony of the fact was attainable. We are aware of no rule of evidence which would shut out testimony of such statements made while Vollert was still in possession of the saloon and was about leaving it — such testimony having been carefully excluded as proof of the truth of such claim.

*By the Court.*— The judgment of the circuit court is affirmed.