LAURA B. MINOR, Respondent, v. O. D. WOODWARD and WILLIS WOOD, Appellants.

Kansas City Court of Appeals, May 4, 1914.

1. PRINCIPAL AND SURETY: Bonds: Liability of Obligors. The defendants came into possession of a publishing company which had a lease on a building, the ground floor of which had been placed on a level three feet above the street grade to suit the peculiar needs of the publishing company. The owner of the building had been given a lien on a printing press to secure the performance of the terms of the lease. Defendants desired to sell the press, and, in order to obtain a release of the lien, gave a bond to the owner of the building to pay the cost (to the extent of $2500) of restoring the ground floor to the street level should the lease be terminated or no new tenant be secured at the end thereof who would use the building with the floor thus raised. At the end of the term no new tenant could be secured who would use the building with the floor thus raised above the street level. Plaintiff reduced the front third of the floor to the street level, the second third was lowered a part of the way and the rear one third was left as it was. The expense of doing this was much less than if she had lowered the entire floor to the full street level, but was greatly in excess of the amount of the bond. She then sued defendants on the bond. *Held*, that the bond was an original undertaking on the part of defendants, and they are not mere sureties for the publishing company; that their liability thereon is not *strictissimi juris*; and that plaintiff's failure to lower the entire floor did not release the obligors.

2. ———: ———: ———. A surety may contract as a principal and by doing so will renounce the right of setting up a defense arising out of the relation of principal and surety.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

C. A. Loomis for appellants.

Scarritt, Scarritt, Jones & Miller for respondent.

TRIMBLE J.—Suit upon a bond in the sum of $2500 executed by defendants to plaintiff on May 3, 1906. In the circuit court plaintiff obtained judgment for the full amount of said bond, and defendants appealed.

The bond and the reason for defendants giving it originated in this wise: In November, 1904, the plaintiff, Mrs. Laura B. Minor, was preparing to erect a three-story business building, with basement thereunder, at the south-east corner of Tenth and McGee streets in Kansas City, Missouri. The building was to face McGee street (which ran north and south) and was to run back east along the south side of Tenth street. The front entrance and first floor were to be on a level with the grade of McGee street. A corporation, known as the I. W. Dumm Publishing Company and certain individuals connected therewith, Mr. Dumm, Mr. Clark and Mr. Horn, were engaged at that time in publishing a newspaper, and desired to rent suitable quarters for the company, and, therefore, proposed to Mrs. Minor that she lease the building, proposed to be erected, to it. The nature of its business, however, did not require the ground floor and entrance to be on the grade of McGee street and did require that said ground floor should be three feet above said grade, as that would give more height and light and air to the basement. Mrs. Minor did not care to erect a building with its ground floor so much above the grade of the principal street on which it was located, thereby making the building suitable for a particular business only, unless she was sure of a long time rental well secured, or would be reimbursed for the

expense necessary in changing the ground floor and front entrance back to the grade of McGee street. The publishing company and the men named as connected therewith agreed to these terms, and thereupon on November 12, 1904, a lease was executed by Mrs. Minor, as first party, to the I. W. Dumm Publishing Company, and said individuals, as second parties, for a term beginning April 1, 1905, and ending March 31, 1910. She agreed therein to erect and complete the building as soon as practicable and to raise the ground floor and change the plans of the outside walls and front so that said floor would be three feet above the normal grade. Permission was given to sublet said building. And the second parties, agreed that "if this lease is not renewed at the end of the first term hereof as hereinbefore provided, or in case this lease is terminated or possession of the leased premises taken by the party of the first part or her representatives for any cause, except total destruction by fire, prior to April 1, 1910, then second parties will pay the first party or her legal representatives the reasonable cost of placing the first floor of said building upon the normal or street grade thereof, including the cost of changing the outside walls and front of said building, so as to make the same complete and workmanlike and to conform to the change in the elevation of the floor; provided, however, that if the first party prior to or at the time of the surrender of the possession of said premises by second parties, shall lease said premises to a third party who will not require the elevation of said first floor to be lowered to the normal or street grade at an annual rental satisfactory to first party, then the first party will waive the claim for making such changes; provided, that in no event shall the cost of making such changes to be charged against second parties exceed the estimate now made by said architects, to-wit, $2500."

The lease further provided that, ''the party of the first part shall have until the termination of this lease a lien upon all the erections, improvements, machinery and fixtures of second parties that may during the term of this lease be placed on or in said land and building, to secure the payment of the rent and the performance of the stipulation and agreement herein contained.''

The building was duly erected and the Publishing Company entered and took possession under its lease and the printing presses and other machinery and personal property placed therein by it became subject to Mrs. Minor's lien for the rent and for the performance of the other terms of the lease.

Just how long the Publishing Company continued therein and to pay rent is not known. Plaintiff attempted to prove that it continued in business only about a year and a half and that then Mr. Woodward, one of the defendants, came into control of the business and began paying the rent on the building. Defendants objected to this as being immaterial, and their objection was sustained. Plaintiff then offered to show that, at the time the bond herein sued on was executed by the defendants to plaintiff, Mr. Woodward was in charge of the businss, paid the rent on the building and that the bond in suit was accepted at his request. Defendants objected to this and were again sustained.

Notwithstanding these adverse rulings of the court, there is enough in the record to show that Dumm, the president of the company and Horn left the country and that in some way, either through financial embarrassment or otherwise, the Publishing Company fell into the hands of Mr. Woodward and that thereafter he, Woodward, paid the rent. The defendants are in no position to assert or complain that the evidence is not definite enough to show a formal legal transfer, sufficient to pass title, of the assets of

the Publishing Company, or of the lease to the defendants and their associates, because they, by objecting to such showing, succeeded in getting the trial court to refuse it admission to the record. But, with the explicit evidence on these points excluded, there is still enough in the record, coupled with the bond itself, from which the conclusion can be reasonably drawn that the defendants were giving the bond for themselves and in their own interest and not as mere sureties for the Publishing Company.

At any rate on May 3, 1903, just 1 year, 5 months and 19 days after the execution of the lease the bond in question was executed. At this time Mrs. Minor held the lease on the building and a lien on an "Optimus" printing press therein for the performance of all the terms of the lease. The defendants were desirous of selling this printing press and, to get it released from Mrs. Minor's lien, they agreed to give her the bond in question. The terms of the bond are as follows:

"We, the undersigned, O. D. Woodward and Willis Wood, of Kansas City, Missouri, do hereby acknowledge ourselves indebted unto Laura B. Minor in the sum of Two Thousand Five Hundred Dollars ($2500), for the payment of which well and truly to be made, we hereby bind ourselves, our successors, executors, administrators and assigns."

The condition of this bond is such that whereas . . . (Here follows a statement that the I. W. Dumm Publishing Company leased the property on November 12, 1904) . . . and

Whereas, it is provided in that lease . . . (Here follows a statement that the front and outside walls were to be changed and the floor raised three feet above the street grade) . . . and

Whereas, it is further provided in said lease that "if this lease is not renewed at the end of the first term.

179 App. 22

thereof as hereinbefore provided, or in case this lease is terminated or possession of the leased premises taken by the party of the first part or her representatives for any cause except total destruction by fire, prior to April 1, 1910, then second parties will pay first party, or her legal representatives, the reasonable cost of placing the first floor of said building upon the normal or street grade thereof, including the cost of changing the outside walls and front of said building so as to make the same complete and workmanlike and to conform to the change in the elevation of the floor; and,

Whereas, said I. W. Dumm Publishing Company in order to secure the performance of the said provisions of the said lease did mortgage or convey unto said Laura B. Minor one "Optimus" printing press, manufactured for it by the Barnhardt Bros. & Spindler Co., of Chicago, and which was placed in the building on the property, aforesaid; and,

Whereas, the first parties desire to have said mortgage released so that said press may be sold and conveyed free from the lien of said mortgage; and,

Whereas, said Laura B. Minor has consented to release and satisfy said mortgage in consideration of this bond;

Now, therefore, if the said first party shall faithfully perform and keep the provisions of said lease in respect to the matters hereinbefore set forth and will save the said Laura B. Minor entirely harmless by reason of any breach of such conditions of said lease then this undertaking shall be null and void; otherwise to remain in full force and effect.

In witness whereof, we have hereunto set our hands and seals this 3rd day of May, 1906.

O. D. WOODWARD,    (Seal)
WILLIS WOOD,    (Seal).

The Publishing Company is not a party to the bond. And it nowhere says it is given as surety for

said Company.  Upon the face of the bond the defend-
ants contract as principals, and the bond is given, not
for the benefit or accommodation of another but for
defendants' own benefit and advantage because they
want to sell the printing press free from Mrs. Minor's
lien.  The undertaking and agreement is not to pay in
case the lessees named in the lease do not pay, but the
condition of the bond is that if they, defendants, shall
faithfully perform and keep the provisions of said
lease then the undertaking is to be null and void.  The
provisions of said lease were 1st, to pay rent, 2nd, to
pay to the extent of $2500 for changing the ground
floor front and walls if the lease was not renewed and
plaintiff could not rent the building with the floor above
the street level.  The defendants performed the first
mentioned provision by paying the rent.  At the end
of the term provided in the lease, March 31, 1910, Mrs.
Minor could not lease the building with the floor as it
was.  Mr. Woodward, at the time he paid the last
month's rent demanded a release from further obliga-
tion but this was refused, and demand was made that
the expense of changing the floor be paid according to
the terms of the bond.

Mrs. Minor, having taken possession of the build-
ing at the end of the leasehold term, was unable to find
a tenant who would rent the building with the floor
thus raised, and after demanding of defendants that
they bear the expense of changing it in accordance with
their bond, she had the floor changed.

Owing to the great increase in the price of labor
and materials between 1904 and 1910 it was found in
1910 that the cost of lowering the whole first floor to
the McGee street level, would greatly exceed the
amount estimated therefor in 1904.  The plaintiff,
therefore, did not lower the entire floor from the front
on McGee street back to the end of the building.  To
have done so would have cost a very large sum much
in excess of what she did do.  Instead of lowering the

entire floor at this large expense, she lowered only one third of the store to the McGee street level, and she lowered the next one third only to the grade of Tenth street at that part, and the rear one third was left as it was. The evidence clearly showed that this cost *much less than to lower the whole floor,* but the reasonable cost of changing the floor, even in this less expensive or more economical way, cost $3829.24 *or nearly $1500 in excess of the bond given by defendants.* That is, the expense of changing the floor in the way plaintiff did change it cost more than the bond in question, but was still much cheaper than if she had lowered the whole floor instead of only one third all of the way and another third only part of the way.

The defendants offered no testimony. The jury found a verdict for plaintiff for the full amount of the bond, $2500, and judgment was rendered thereon.

It is the contention of defendants that they are in the position of mere sureties for the Publishing Company, and that their liability on said bond is, therefore, *strictissimi juris,* of the strictest right or law. Their position is that they are not liable for any amount thereon unless plaintiff put the whole of the first floor down to the McGee street grade, notwithstanding the fact that the reasonable cost of lowering it as she did was less than the cost of lowering the whole and was more than the amount of the bond.

The language of the bond itself shows that it is an original undertaking of defendants to pay Mrs. Minor the reasonable cost of placing the first floor of said building upon the street grade, including the cost of changing the outside walls and front of said building to conform to said change, if the lease is not renewed and provided she cannot rent it with the floor above grade, the amount to be paid by them, however, not to exceed $2500. "Where a surety binds himself in terms as a principal in the obligation which he signs, he will be held as principal, and will be entitled to none of the

rights of a surety. There is no rule of law which pro-
hibits a surety from waiving the right which belongs
to him as such. Such a waiver has nothing in itself
offensive to the policy of the law. The express terms
of the obligation in such case exclude the idea of surety-
ship, and the creditor has a right to avail himself of
the contract his vigilance has obtained.'' [1 Brandt
on Suretyship Sec. 51.] ''A surety may contract as
''a principal'' and by so doing will renounce the right
of setting up a defense arising out of the relation of
principal and surety.'' [Picot v. Signiago, 22 Mo. 587;
McMillan v. Parkell, 64 Mo. 286; Sprigg v. Bank, 10
Pet (U. S.) 255; Derry Bank v. Baldwin, 41 N. H. 434;
Menaugh v. Chandler, 89 Ind. 94.] In the above case
of Picot v. Signiago, 22 Mo. l. c. 593, our Supreme
Court said: ''The defendant might have become a
mere surety to the contract, but when he renounced
that character and expressly bound himself as princi-
pal, with what face can he afterwards insist that he is
only a surety?'' Parties having signed a bond are
estopped to deny the facts recited therein. [Brown v.
Ligon, 92 Fed. 851; 1 Brandt on Suretyship Sec. 52;
Monteith v. Commonwealth, 15 Grattan (Va.) 172.]
The mere fact that defendants bound themselves to
pay if the lease was not renewed and Mrs. Minor could
not lease the building with the floor as it was, did not
make defendants sureties, but was an original under-
taking on their part that if the specified contingencies
arose they would pay her the reasonable cost of chang-
ing the floor, walls and front to the extent of $2500.
[Academy of Music Co. v. Davidson, 85 Wis. 129.]
And on the strength of this undertaking on their part,
Mrs. Minor released her mortgage on the printing
press and allowed defendants to sell it.

The bond does not require, as a condition prece-
dent to her right to be paid the reasonable cost of
changing the floor, that Mrs. Minor must first do the
remodelling. The lease says: ''If this lease is not

renewed at the end of the first term thereof. . . .
then second parties will pay first party or her legal
representatives the reasonable cost of placing the first
floor of said building upon the normal or street grade
thereof, including the cost of changing the outside
walls, etc.'' The bond quotes this clause and says
that as Mrs. Minor holds a lien on the printing press
to secure performance of the terms of the lease and
as they want to get rid of this mortgage and sell the
press and Mrs. Minor is willing to release ''in consid-
eration of this bond'' therfore if they save Mrs. Minor
entirely harmless from loss by reason of any breach of
such terms, then the undertaking was to be null. Sup-
pose at the end of the lease no tenant could be found
who would take the floor as it was and that Mrs. Minor
had no funds with which to change it, would defend-
ants' obligation under the terms of the bond cease?
Unless the terms of the bond make the doing of the
work a condition precedent to a right or cause of action
thereon, the obligee in the bond is not required to do
it before bringing suit. [Farley v. Moran, 31 Pac.
(Cal.) 158.] In Fuller Co. v. Doyle, 87 Fed. 687, a
contractor Doyle agreed to erect a building for plain-
tiff and gave bond which provided that if the con-
tractor did not fulfill the contract, plaintiff could en-
ter upon the premises and cause the work to be com-
pleted. The contractor abandoned the work and plain-
tiff finished it. The court held that plaintiff's cause
of action accrued when the contractor abandoned the
job, and held further that the variations made by the
plaintiff from the original plans did not invalidate the
bond or release the surety because its liability be-
came fixed when the contractor abandoned the con-
tract and the mere fact that plaintiff, in doing the
work contracted to be done, did some other things for
which no claim was made, could not change the mat-
ter. In the case at bar, while the cost of remodeling
the building was $10,036, yet the cost of lowering the

two thirds of the floor that was lowered (the first one-third being lowered the full three feet to the level of McGee street and the next one third not quite so low) was kept separate from the other expense and was $3829.24 which was still more than the bond. So that it is not seen wherein defendants have any right to complain because Mrs. Minor did not go to still further expense and lower the remaining third of the floor. She was compelled to lower the front third down the full three feet to the level of McGee street and the next one-third a part of that distance and to conform the front and walls to such change all of which cost less than to lower the entire floor. The liability of defendants became fixed when the lease was not renewed and no new tenant was found. Mrs. Minor had a right to sue then for the reasonable cost of lowering the floor. She did lower two thirds of it and in doing so spent more money than the bond was given for but less than it would have cost to lower the entire floor. What right have defendants to complain if she did not lower the remaining one third? Their liability was fixed before she lowered any part of it and the limit of the amount they obligated themselves to pay was passed in doing the part she did. In Spear v. Stacy, 26 Vt. 61, the defendant gave plaintiff a bond to complete a building but failed to finish it. The plaintiff brought suit, and it appeared that some of the work plaintiff did in finishing the building was not done until after the institution of the suit. The court held that the finishing of the building was not a condition precedent to plaintiff's recovery but that there had been a breach of the bond when defendant failed to complete the building and that plaintiff's cause of action accrued then. The same doctrine is held in Barnett v. Franklin College, 37 N. E. 427.

The petition is not drawn upon the theory that the doing of the work by plaintiff in lowering the floor is a condition precedent to her right to recover upon the

bond. Neither does the allegation that she lowered the floor and expended thereon, in doing so, the sum of $3600 which was the reasonable cost of doing the work, constitute a pleading that she lowered the *whole* floor so as to make proof of lowering two thirds thereof a variance from the pleading. It will not do so unless we are to consider the pleading with as much or more strictness than an indictment under the old common law procedure. The allegation that she had done the work was a proper, though perhaps not a necessary, allegation since evidence that the work was done and of its cost would be an excellent showing as to the extent and reasonableness of such cost. There was nothing in the petition limiting the plaintiff to a right to recover upon showing, as a condition precedent, that she had lowered the whole floor rather than a part of it.

The plaintiff is not suing for work of an entirely different character from that specified in the bond. She is suing for the very work covered by it. She is entitled to recover. And the judgment should be affirmed. It is so ordered. *Ellison, P. J.,* concurs. *Johnson, J.,* dissents.