Mary A. HOOK (Plaintiff), Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and Winfred Edwards (Defendants), Appellants.

Nos. 29239, 29260.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

L. F. Stephens, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellants.

Mogab & Jaudes, Donald S. Hilleary, St. Louis, for respondent.

WOLFE, Commissioner.

This case comes to the writer upon reassignment. It is an action for damages arising out of personal injuries that occurred when an automobile, in which the plaintiff was a passenger, came into collision with a bus. The bus was owned and operated by defendant St. Louis Public Service Company and the driver of the bus was defendant Winfred Edwards. The trial resulted in a verdict and judgment for the plaintiff in the sum of $7,500. After unavailing motions for a new trial both defendants appealed.

Plaintiff, Mary A. Hook, was riding in an automobile owned and driven by her husband, Leslie H. Hook. They were traveling northwardly on Hodiamont Avenue, in the City of St. Louis, on September 4, 1953. It was about 5:45 in the morning and it was

raining. They were approaching the intersection of Horton Place. Horton Place runs east and west and Hodiamont is called a north and south street although it runs more southwest to northeast. The streets do not therefore intersect at right angles, and as Horton Place continues to the east of Hodiamont there is an offset to the north of about 25 feet. Horton Place is about 36 feet wide to the west of Hodiamont and 30 feet wide to the east of Hodiamont. Hodiamont Avenue is 35 feet wide. There are stop signs on all four corners of the intersection.

The plaintiff testified that as they were proceeding northwardly on Hodiamont Avenue they came to the stop sign for the Horton Place intersection and that her husband stopped there. This stop sign is 15 feet south of the south curb line of Horton, as it continues eastwardly, and about in line with the north curb line of Horton Place to the west. Mrs. Hook said that her husband started forward and that as he proceeded north on Hodiamont she turned to talk to her daughter and suddenly saw a bus coming toward them, at which time she said, "Watch out, there is a bus", and an instant later their car came into collision with the right front corner of the bus, throwing her against the windshield and causing the injuries of which she complains. She said that after the impact their car was just past the center line of Horton Place if that line were projected from the east.

Plaintiff's husband testified that when driving northwardly toward the intersection he saw the bus when he was about 75 feet from the south curb of Horton Place. At that time the bus was about 100 feet west of the intersection and traveling toward it at an estimated speed of 8 to 10 miles per hour. The witness said that his own car was then going at an approximate speed of 12 to 15 miles per hour. He reached the stop sign in four or five seconds after first seeing the bus and he slowed to 2 or 3 miles per hour. He then accelerated to go through the intersection and to continue northwardly on Hodiamont. He reached an estimated speed of 7 or 8 miles per hour when his wife's exclamation made him look to the left and he saw the bus close upon him and still traveling at 8 or 10 miles per hour. Before he could apply his brakes the collision occurred with the left front of his car and the right front corner of the bus striking. He said that his car traveled 3 or 4 feet after the impact. Both Hook and his wife testified that they heard no horn sounded at any time.

Testifying on behalf of himself and the other defendant, the bus driver said that he was eastbound on Horton Place and was to turn north on Hodiamont Avenue which would have been a turn to his left. He reached the west curb line of Hodiamont and stopped even with it. There were two automobiles going south at the time and the bus remained stopped at the intersection until they passed. He said that he then let his bus move slowly into the intersection and saw the car, in which the plaintiff was riding, northbound on Hodiamont about a block away. It was traveling at a speed of 20 or 25 miles per hour and it did not come to a stop at the stop sign. When it appeared that the automobile was not going to stop he brought the bus to a stop near the center line of Hodiamont. He did not sound his horn. He said that after the bus had stopped the collision occurred, and that the driver of the automobile told him that he did not see the bus as his windshield wiper was not working. The bus at the time of the collision was headed in a northeasterly direction and the right front corner of it was struck by the automobile. There was also evidence by police officers that Hook told them that he applied his brakes and skidded into the bus. These statements were denied by Hook.

This, with the addition of medical testimony, was the main part of the evidence developed. Other statements pertinent to

the points raised can be more clearly considered when set out with the discussion of those points.

The case was submitted to the jury on the theory of humanitarian negligence in that there was a failure to warn, to slacken the speed of the bus, or to stop, and it is appellants' contention that there was not sufficient evidence to warrant the submission of the case on any of the three issues.

The necessary elements of a case under the humanitarian doctrine are set forth in the often-cited case of Banks v. Morris, 302 Mo. 254, 257 S.W. 482, loc. cit. 484. The "formula" is:

> " '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' "

■ The parties seem to be in agreement that the automobile entered the zone of imminent peril as it left the stop sign, but it is maintained by the defendants that there was not sufficient time for the driver to have sounded an effective warning after that and that therefore the third element of a humanitarian case, as stated above in Banks v. Morris, is not present. It is true that in order to make a submissible case of a failure to warn there must be evidence that there was sufficient time after the peril was discoverable for the warning to have been sounded and for the party entering the zone of peril to have reacted to the warning and thus have avoided a collision. Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764; Smith v. Siedhoff, Mo., 209 S.W.2d 233. The obvious reason

for this is that a failure to warn could have no causal connection with a collision if a warning when given would have been too close in point of time for it to have been heeded and acted upon in time to avoid the collision.

In order to bring themselves within this rule, the defendants ask us to consider certain evidence as conclusive of the fact that no timely warning could have been given. Hook, in testifying about what occurred after he reached the stop sign, said that he put his car in second speed and started forward. He continued "My wife said, 'Look out, there is a bus.' *About that time I was hit.*" He said that his speed was 7 or 8 miles per hour *"just starting up"*. He also said he had no time to swerve. He was asked, "Was it immediately after you had started to accelerate from your rolling stop?" and he answered *"I had just started up."* It is the italicized portion of the above testimony upon which the defendants rely.

■ It is axiomatic that in determining whether or not the plaintiff made a case for the jury we must consider all of the evidence in a light most favorable to the plaintiff, De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, and we cannot consider the statement set out to the exclusion of all other testimony. We are at some disadvantage in reviewing the evidence as it was before the trial court, for the witnesses used a large chart of the intersection and marked upon it the position of the vehicles at various stages of their travel, and that chart was accidentally destroyed after trial. We do, however, have a copy of the chart used, minus the markings made by the witnesses. It shows this unusual angular intersection constructed in such a fashion that a bus from the west on Horton Place near the south curb at the point of entering Hodiamont would actually be to the left rear of a car at the stop sign for northbound cars on Hodiamont. This means that as the automobile started from the stop sign the

bus was angling toward it from its left rear. Hook said that he traveled from the stop sign to a point near the intersection and that his speed was increased from 2 or 3 miles per hour to 7 or 8. If he traveled from 2 to 7 miles per hour over this distance his average speed would have been about 4½ miles per hour which is at the rate of 6¾ feet per second. The point of impact was about 26 feet from the stop sign. If Hook traveled at the rate of 6¾ feet per second, it would have taken almost four seconds for him to reach the point of collision. The reaction time would be three-fourths of a second for each driver. Victmeier v. Voss, Mo., 246 S.W.2d 785. Therefore both drivers had time to react to the situation with over two seconds left for Hook to swerve or stop his car. So we cannot say that there was no evidence to support the charge of negligent failure to warn.

■ As to the stopping of the bus, the defendants assert that there was no proof of the distance in which the bus could have stopped. Plaintiff asked the bus driver at what speed he could have stopped the bus, with safety, under the conditions present if it were traveling at a speed of 10 miles per hour. The defendants objected to this question and the court sustained the objection. Plaintiff's counsel then made an offer of proof that the bus could have been stopped in about 15 feet. Counsel for the defendants objected to the offer on the ground that it was irrelevant and immaterial. The trial court sustained this objection and after leading the court into this error, the defendants now urge that it was material to the plaintiff's case and that she cannot recover. There is authority for the proposition that the defendants are estopped from raising the point now. Paul v. Western Union, 164 Mo.App. 233, 145 S.W. 99; Minor v. Woodward, 179 Mo. App. 333, 166 S.W. 855; Cox v. Missouri-Kansas-Texas R. Co., 335 Mo. 1226, 76 S.W.2d 411. But regardless of this, the driver of the bus could have reacted to the situation and still have had about three seconds to stop. As for the distance, he would have been at that time 45 feet away if traveling at 10 miles per hour. We take judicial notice that a bus traveling at that rate of speed could have been stopped far short of 45 feet. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

Although Hook fixed the speed of the bus at two points, the defendants question the sufficiency of the proof as to the speed and the position of the bus, but Hook said that he first saw the bus about five seconds before he reached the stop sign and it was about four seconds thereafter that the collision occurred. This would have been about nine seconds of traveling time for the bus, and at a continued speed between 8 and 10 miles per hour nine seconds is about the time that would be required for it to travel the 125 feet. This was therefore sufficient evidence for the jury to conclude that it traveled at those speeds throughout that distance.

It seems quite obvious that if the driver could have so stopped he could also have slackened his speed sufficiently in the distances and at the speeds mentioned so that Hook's car would have passed before the bus reached the point of the collision.

■ Defendants also state that there was no evidence that the bus was equipped with a horn or brakes. Facts consistent with legality are presumed to exist, so we may indulge the defendants with the presumption that the bus had both brakes and horn. 31 C.J.S., Evidence, § 134, p. 771; Missouri Power & Light Co. v. Creed, Mo. App., 32 S.W.2d 783; Allen v. Kessler, Mo., 64 S.W.2d 630.

■ The defendants contend that the court erred in not sustaining their objection to the testimony of a Dr. Bergman at a point where he said that he saw plaintiff in the hospital on September 4, 1953 (the day of the accident), and that she stated that she had been injured in an automobile

accident. Certainly some inquiry as to the cause of an injury is proper and necessary for intelligent treatment of a patient, and where, as here, the statement of the patient does not extend to a narrative of the facts attending the injury, its admission is not erroneous. Lesch v. Terminal R. R. Ass'n of St. Louis, Mo., 258 S.W.2d 686.

In September of 1954, after some intermittent medical treatment, the plaintiff was admitted to Barnes Hospital and the records of the hospital were in evidence. There was no objection to the admissibility of the records as such, but there was objection to portions of the records on the ground that they were hearsay. These parts of the records related that plaintiff had been in an automobile accident and had struck her head and set out a history of her complaints after the accident. Some of the matters set forth were properly subject to the objection that they were hearsay, but the plaintiff and her doctor had both fully testified to all that the records contained. The defendants questioned their own medical experts about the cause of these complaints. The issue really tried was not the verity of the disability of which plaintiff complained, but whether it was caused by the collision or by pregnancy and pre-existing ailments. It appears, therefore, that the defendants were in no way prejudiced by the admission of these portions of the records. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663; Lang v. St. Louis-San Francisco Ry. Co., 364 Mo. 1147, 273 S.W.2d 270.

In view of all the foregoing, it is the recommendation of your Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C.. is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.